UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TONYA GUNTER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br>UNITED FEDERAL CREDIT UNION, DOES 1-5 inclusive and ROE CORPORATIONS 6-10 inclusive,<br><br>Defendants. | Case No. 3:15-cv-00483-MMD-WGC<br><br>ORDER<br><br>(Def.'s Motion to Dismiss — dkt. no. 25) |

**I.     SUMMARY**

Plaintiff Tonya Gunter ("Gunter") filed a class action suit against defendant United Federal Credit Union ("UFCU") alleging that the credit union had breached contracts and violated state law through its practice of charging overdraft fees to customers. (ECF No. 1.) UFCU moved to dismiss Gunter's complaint (ECF No. 18), and Gunter filed an amended complaint asserting a breach of contract claim and a claim for violation of the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA" or "the Act") (ECF No. 24.) UFCU now moves for dismissal of Gunter's amended complaint for failure to state a claim. (ECF No. 25 ("Motion").)

The Court has reviewed Gunter's response (ECF No. 31) and UFCU's reply (ECF No. 33).[1] The Court also heard oral argument on May 16, 2016. (ECF. No. 52.) For the reasons discussed below, UFCU's Motion is denied.

---

[1] Gunter also filed a Notice of New Authority in support of her opposition to UFCU's Motion. (ECF No. 56.) UFCU objects to Gunter's Notice of New Authority as a violation of the local rules and requests it be stricken. (ECF No. 57.) LR 7-2(g) prohibits
*(fn. cont…)*

## II.     BACKGROUND

The case centers on a dispute over overdraft fees. Gunter is a customer of UFCU, where she maintains a checking and savings account. (ECF No. 24 at 3.) UFCU offers, and Gunter uses, a debit card connected to her checking account. (*Id.* at 4.) UFCU also provides a service called Courtesy Pay, wherein the credit union will cover some purchases even though a customer does not have enough funds in her account to pay for an item. The credit union then charges the customer an overdraft fee. (*Id.* at 6.) The details of Courtesy Pay are laid out in an agreement which the parties refer to as the Account Agreement. (ECF No. 24-1.) Pursuant to a federal regulation, UFCU also sent its customers a document the parties refer to as the Opt-In Agreement, which describes Courtesy Pay and requires customers to choose whether or not to enroll in the service. (ECF No. 24-2.)

The parties dispute the terms of the Account Agreement underlying Courtesy Pay, specifically the method by which the credit union assesses whether a customer has the available funds to pay for purchase. Gunter alleges that the Account Agreement means UFCU may only assess overdraft fees if the customer's actual or ledger balance is too low to cover a purchase, but in practice UFCU uses an "artificial internal calculation" and charges fees even if customers have available funds. (*Id.* at 7.) UFCU argues that the Account Agreement allows it to "determine the amount of available funds" in a customer's account in order to determine how to apply Courtesy Pay, and that its method, which accounts for pending transactions, is an appropriate and accurate method for determining the amount of money in a customer's account. (ECF No. 25 at 6; ECF No. 33 at 3-4.)

///

///

---

*(…fn. cont.)*
supplemental filings, including supplemental authorities, without leave of court. This is the second time Gunter has failed to comply with the local rules. UFCU's request to strike ECF No. 56 is granted.

## III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged — but not shown — that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory."
///

3

*Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

## IV. DISCUSSION

### A. Breach of Contract

In her first cause of action, Gunter seeks to assert a claim for breach of contract or in the alternative for a breach of the implied covenant of good faith and fair dealing. A plaintiff asserting a breach of contract claim under Nevada law must allege the following elements: (1) the formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages. *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev.1987). "An implied covenant of good faith and fair dealing exists in every Nevada contract and essentially forbids arbitrary, unfair acts by one party that disadvantage the other." *Frantz v. Johnson*, 999 P.2d 351, 362 n. 4 (Nev. 2000). A breach of the covenant arises "where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, P.2d 919, 923 (Nev.1991).

In the absence of ambiguity, contract interpretation is an issue of law for the court, and may be decided on a motion to dismiss. *P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed.Cir.1984). A contract term is ambiguous if it is "reasonably susceptible to more than one interpretation." *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev.2003).

Gunter alleges that she entered into a contract with UFCU governed by the Account Agreement and the Opt-In Agreement. (ECF. No. 24 at 7.) She further alleges that she has been improperly assessed overdraft fees in violation of the terms of those agreements. Specifically, she alleges on July 23, 2015, UFCU charged her eight overdraft fees of $30 each, even though she had sufficient funds in her account to cover all of her transactions. (*Id.* at 8.)

///

UFCU argues that the express terms of the contract in this case are clear and it has abided by them. (ECF No. 25 at 6.) In other words, UFCU argues that Gunter has not alleged any behavior that would, even if taken as true, amount to a breach of contract.

The Account Agreement states that UFCU may, at their discretion "honor withdrawal requests that overdraw [a customer's] account," and "charge fees for overdrafts." (ECF No. 24-1 at 5.) The Agreement goes on to describe Courtesy Pay as "a service that allows [UFCU] to pay an item presented for payment against your checking account even if it causes the account to become overdrawn." (*Id.* at 7.) In a different portion of the Agreement, which UFCU points to in support of its argument, the credit union retains the right to "determine the amount of available funds in [a customer's] account for the purpose of deciding whether to return an item for insufficient funds at any time between the time [UFCU] receive[s] the item and when [UFCU] return[s] the item or send a notice in lieu of return." (*Id.* at 5).

This language does not address how the credit union determines when an overdraft has occurred vis a vis the available funds in a customer's account. While UFCU is correct in arguing that the Court may dismiss a breach claim if a plaintiff's allegations are directly refuted by the express terms of a contract, that is not the case here. The Account Agreement is ambiguous on this point, and Gunter has offered a plausible interpretation. She has therefore alleged each element of a properly plead breach of contract claim. UFCU's Motion does not address Gunter's alternative claim for breach of the implied covenant of good faith and fair dealing. Therefore UFCU's Motion is denied in regards to Gunter's first cause of action.

However, as noted at oral argument, Gunter has not alleged that she was a party to the Opt-In agreement. To the extent she seeks to rely on the Opt-In Agreement in showing a breach, the complaint is insufficient. Therefore the Court will grant Gunter leave to amend, if she so chooses, to include allegations that Gunter was a party to both the Account Agreement and the Opt-In Agreement.

### B. Electronic Fund Transfer Act

The EFTA "provide[s] a basic framework establishing the rights, liabilities and responsibilities of the participants" in electronic banking. 15 U.S.C. § 1693. The EFTA also charges the Federal Reserve Board with devising rules to carry out the purposes of the Act. 15 U.S.C. § 1693b. One such rule, 12 C.F.R. §1005.17, requires a "brief description of the financial institution's overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed, including ATM and onetime debit card transactions." 12 C.F.R. § 1005.17(d)(1). 15 U.S.C. § 1693m imposes civil liability on any person who fails to comply with the provisions of the EFTA.

Gunter's second cause of action alleges that UFCU failed to comply with 12 C.F.R. § 1005.17 because it did not "truthfully and accurately provide the conditions under which an overdraft fee" would be assessed. (ECF No. 24 at 14.)

This second claim turns on the same dispute as Gunter's breach of contract claim, namely that UFCU's method of calculating funds in order to determine whether an overdraft occurred is inconsistent with the conditions described in its Account Agreement and Opt-In Agreement. UFCU argues that the Opt-In form accurately describes its policy and practice, while Gunter argues that it does not.

As discussed above, the means of determining whether a customer overdrew her account is not clearly defined in the Account Agreement. The Opt-In Agreement describes an overdraft as a situation wherein the credit union pays even though the customer "do[es] not have enough money in [their] account to cover" the transaction. (ECF No. 24-2.) This language is similarly ambiguous in regards to how the credit union determines whether there is enough money in a customer's account. Therefore, if Gunter's proposed interpretation of the Account Agreement is correct, she may also be correct in arguing that UFCU did not provide an accurate description of its overdraft practices in its Opt-In Agreement, as required by 12 C.F.R. § 1005.17.

For these reasons, UFCU's Motion to Dismiss is denied with respect to Gunter's second cause of action.

## V. CONCLUSION

Accordingly, it is hereby ordered that UFCU's Motion to Dismiss (ECF No. 25) is denied.

It is further ordered that Gunter's Notice of New Authority (ECF No. 56) is stricken.

It is further ordered that Gunter is granted leave to amend her Amended Complaint (ECF No. 24) to include allegations that she was party to the Opt-In Agreement, if she so chooses. The Second Amended Complaint must be filed fourteen (14) days from entry of this order.

DATED THIS 22nd day of June 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE